UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ELI J. DUFFEY,

    Plaintiff,

v.

GREGORY S. POPE, et al.,

    Defendants.

Case No. 2:11-cv-16
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Certify Class. (Doc. No. 30.) For the reasons set forth below, the Court **DENIES** Plaintiff's motion and orders additional briefing on the issue.

### I. BACKGROUND

On August 24, 2006, Plaintiff Eli J. Duffey ("Duffey") purchased a used vehicle from Budget Car Sales, a business located in Franklin County, Ohio. Duffey paid a $2,600 down payment with a check drawn on his bank account, which was returned for insufficient funds.

On December 6, 2006, Defendant Winona Holdings purchased Duffey's dishonored check from Budget Car Sales. Winona Holdings made several unsuccessful attempts to collect on the check. Winona Holdings retained Defendant Gregory S. Pope and Pope Law Office's ("Pope Defendants") to attempt to collect on Duffey's dishonored check. The Pope Defendants too unsuccessfully attempted to collect on the dishonored check. On December 1, 2009, the Pope Defendants filed a collection complaint on behalf of Winona Holdings in the Franklin County Municipal Court captioned *Winona Holdings, Inc. v. Eli J. Duffey*, Case No. 2009 CVF

052504. (Doc. No. 66-6.)

On January 6, 2011, Duffey brought this action on behalf of himself and three classes of similarly situated persons pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.01 *et seq.* In his complaint, Duffey alleges that the Pope Defendants and Winona Holdings (together "Defendants") engaged in unfair debt collection practices by (1) incorrectly listing Budget Car Sales as the plaintiff in some of the filings made in the state court collection action, (2) filing a debt collection action that was barred by the applicable statute of limitations, and (3) filing the collection action in an improper venue. Duffey ultimately withdrew his claim related to improper venue.

On November 2, 2011, Duffey moved for class certification. (Docs. No. 30.) Defendants opposed that motion (Doc. No. 33) and Duffy filed a reply in support of his motion (Doc. No. 46). On May 30, 2012, the Pope Defendants moved for summary judgment on both of Duffey's claims for relief (Doc. No. 64), and Winona Holdings moved for summary judgment on both of Duffey's claims for relief (Doc. No. 65). Also on May 30, 2012, Duffey moved for summary judgment on the liability aspect of his claim for relief related to filing the collection suit against him outside of the applicable statute of limitations. (Doc. No. 66.)

Issued immediately preceding this Opinion and Order is a decision in which the Court granted in part and denied in part the Pope Defendants' and Winona Holdings' motions and grants Duffey's motion.[1] Specifically, the Court granted Defendants' requests for summary

---

[1] The Sixth Circuit has "consistently held that a district court is not required to rule on a motion for class certification before ruling on the merits of the case." *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002) (citing *Sprague* [*v. GMC*], 133 F.3d

2

judgment on Duffey's claim that Defendants violated the FDCPA and the OCSPA by making false, deceptive, confusing or misleading representations in the collection case filed in the Franklin County Municipal Court; denied Defendants' request for summary judgment on Duffey's claim that Defendants violated the FDCPA and the OCSPA by filing a time-barred collection suit; and granted Duffey's request for summary judgment on the liability portion of his claim that Defendants violated the FDCPA and the OCSPA by filing a time-barred collection suit. Consequently, the only remaining issues before the Court are the amount of damages due to Duffey for Defendants' filing the collection suit against him outside of the applicable statute of limitations and whether that issue is appropriate for class action treatment.

## II. STANDARD

A plaintiff has the burden of proving class certification is proper. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir.2007); *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The trial court maintains substantial discretion in determining whether or not to certify a class action. *Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 643 (6th Cir. 2006) ("The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation.") (citation omitted).

A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a) of the Federal Rules of Civil Procedure, which include establishing (1) that the class is so large that joinder of all members is impracticable, (2) that there are one or more questions of law

---

[388,] 397 [(6th Cir. 1998)]; *Jibson v. Mich. Educ. Ass'n-NEA*, 30 F.3d 723, 734 (6th Cir. 1994)).

3

or fact common to the class, (3) that the named parties' claims are typical of the class, and (4) that the class representatives will fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a). Further, a plaintiff must show that the proposed class is precisely defined and ascertainable. *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 U.S. Dist. LEXIS 95087, at *14-15 (S.D. Ohio Aug. 25, 2010) (citing *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008)). The Sixth Circuit has explained that "the class may only be certified if, 'after a rigorous analysis,' the district court is satisfied that these prerequisites have been met." *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir.2003).

In addition to the prerequisites of Rule 23(a), a plaintiff must also show that his or her suit falls within one of the three types of class actions described in Federal Rule of Civil Procedure 23(b). Here, Duffey seeks class certification under Rule 23(b)(2) and Rule 23(b)(3). The primary distinction between 23(b)(2) and 23(b)(3) classes is in the relief sought: (b)(2) classes are confined to declaratory and injunctive relief actions (with certain limited exceptions), whereas (b)(3) classes apply to damages actions. *Reeb*, 435 F.3d at 651. "The due process considerations in a (b)(3) damages action are higher than in a (b)(2) declaratory/injunctive relief action because 'monetary relief . . . is less of a group remedy and instead depends more on the varying circumstances and merits of each class member's case.'" *Stewart*, 252 F.R.D. at 391 (citing *Karnette v. Wolpoff & Abramson*, No. 06-44, 2007 U.S. Dist. LEXIS 20794, at *33 (E.D. Va. Mar. 23, 2007) and *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)). "Consequently, courts are required to provide notice of a certified (b)(3) action to all class members and an opportunity for them to opt-out of the class (so that they will not be bound by any final judgment and can bring individual actions if they wish)." *Id.* (citing Fed. R. Civ. P.

4

23(b)(3); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (holding that constitutional due process requires notice of right to opt-out of suits for money damages)).

## III. ANALYSIS

Defendants argue that Duffey is not entitled to have his proposed class certified because the class is not ascertainable, does not meet the typicality requirement of Rule 23(a), and does not meet the predominance requirement of Rule 23(b). As to ascertainability, this Court has explained that "[t]he proposed class 'must be capable of concise and exact definition.'" *Cerdant, Inc.*, 2010 U.S. Dist. LEXIS 95087, at 15–16 (citing *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D. Ill. 1974)). "Although this requirement is not expressly spelled out in Rule 23(a), it has been implied by courts." *Stewart*, 252 F.R.D. at 391 (citing cases); *see also Cerdant, Inc.*, 2010 U.S. Dist. LEXIS 95087, at 15–16 (citing *Romberio v. Unumprovident Corp.*, Case No. 07-6404, 385 Fed. Appx. 423, 2009 U.S. App. LEXIS 695, 2009 WL 87510, *7 (6th Cir. 2009) (stating that "the need for individualized fact-finding" made the "class definition unsatisfactory"); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (noting that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23"). "The 'touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership.'" *Id.* (citing, *inter alia*, *Stewart*, 252 F.R.D. at 391; *Napier v. Laurel County*, No. 06-368, 2008 U.S. Dist. LEXIS 14524, 2008 WL 544468, *6 (E.D. Ky. Feb. 26, 2008)).

5

The class definition[2] proposed by Duffey relates to his claim that Defendants violated the FDCPA and the OCSPA by filing collection suits outside of the applicable statute of limitations. The collection suits were filed pursuant to the Ohio Civil Theft Act, Ohio Rev. Code § 2305.11(A), and are subject to a one year statute of limitations. The class definition proposed by Duffey is as follows:

> [A]ll persons against whom defendants filed a complaint in an Ohio state court that is substantially similar to the complaint attached hereto as Exhibit A [*Winona Holdings, Inc. v. Eli J. Duffey*, Case No. 2009 CVF 052504]; and the person received the complaint at any time after January 6, 2009; and defendants filed the complaint more than 12 months after the "date of dishonor" for the check at issue.

(Doc. No. 30 at 2.)

Defendants argue that this class definition is unworkable because the class members cannot be determined except through individualized factual inquiries regarding the commencement and expiration of a statute of limitations in the underlying state court cases. This Court agrees.

As Defendants correctly point out, the tolling provision of Ohio Revised Code § 2305.15(A) can be used to extend the one year limitations period in regard to some of the proposed class members if that member, who resides in Ohio, is "out of state, has absconded or concealed self." Ohio Revised Code § 2305.15(B) could also be used to extend the one year limitations period if a proposed class member "is imprisoned for the commission of any offense." In order to determine if the limitations period for one or more individual class members was

---

[2]In his motion for class certification, Duffey also proposes two other classes. However, Duffey withdrew the claim for relief related to the class directed at the alleged improper venue claim and this Court granted summary judgment to Defendants on the claim related to the class directed at misleading representations made in the state court filings.

6

tolled, this Court would have to examine the particular circumstances of each individual putative class member.

Further, when the limitations period under Ohio Revised Code § 2305.11(A) begins to run is subject to the "discovery rule," which could extend the limitations period beyond 12 months from the date of the check's dishonor and considers the knowledge and/or constructive knowledge of the payee. *Ciganik v. Kaley*, 2004-Ohio-6029, 2004 WL 2580593 (Ohio Ct. App. Nov. 12, 2004) (applying discovery rule to Ohio Revised Code § 2305.11(A)). Duffey attempts to gloss over this problem by asking the Court to assume that dishonored checks would have become known to the payee within 60 days of the check date. Defendants are correct, however, that some checks may have taken more than 60 days to be returned for insufficient funds while others may have taken less than 60 days. And, the individual circumstances of some payees may have prevented them from discovering that a check had been dishonored for more than 60 days. These considerations are not ministerial, but instead would require more intensive individualized factual searches and determinations.

Consequently, the Court finds that the class as proposed is not sufficiently ascertainable. However, this Court has broad discretion to modify the class definition and is inclined to do so here. *See Stewart*, 252 F.R.D. at 392 ("The better practice, however, is for the Court simply to exercise its discretion to modify the class definition to eliminate [the offending language].") (citing, *among others*, *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (modifying the class definition to ensure that the defendant was held accountable only for its own alleged wrongdoing, and not that of others). *See also* 5 James W. Moore et al., Moore's Federal Practice § 23-21[7] at 23-62.2 (3d ed. 1999) ("If the court finds that the

7

proposed definition is not sufficiently definite, . . . [t]he court may, in its discretion, grant certification but modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.") This Court has previously recognized the importance of class actions in consumer-protection cases like the one *sub judice*:

> "One important factor that indicates the superiority of a Rule 23 action in the consumer-protection field is that typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis." Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, 7AA, § 1782. The Court is mindful that a failure to certify a class will most likely render individual actions in this case noneconomical for Plaintiffs to pursue. *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941) (cautioning against "closing the door of justice to small claimants"); *see also Amchem* [*Prods. v. Windsor*], 521 U.S. [591,] 617 [(1997)] (noting that " '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' ") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).
>
> Plaintiff points out that a typical class member is unaware that Hyundai may have disposed of his or her vehicle in violation of the law, and that without this knowledge, few class members can be expected to sue individually when they are unlikely even to know that they have a valid claim. Plaintiff also emphasizes that a typical class member, whose vehicle was repossessed for failure to make timely payments, is unlikely to be able to afford an attorney. "A class action is the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the initiative to commence an action on their own behalf." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 645 (N.D. Ill., 2002) (citation omitted).

*Jenkins v. Hyundai Motor Financing Co.*, No. C2-04-720, 2008 WL 781862, at *8–9 (S.D. Ohio March 24, 2008). Here, the putative class members all have had checks returned for insufficient funds. The putative class has several similarities to the one in *Jenkins*. That is, the typical class members are unlikely to be able to afford an attorney and, further, are likely to be largely unsophisticated and uninformed of their rights.

8

The Court finds Judge Marbley's opinion in *Stewart*, *supra*, helpful here. In that case, the plaintiff proposed her Rule 23(b)(2) class definition as:

> [A]ll consumers who have been subject to an order of garnishment or attachment of exempt property or funds, whether temporary or permanent, based on an affidavit signed by any principal, partner, or employee of defendant Cheek & Zeehandelar, at any time on or after August 24, 2004.

252 F.R.D. at 392. The court found that the definition did not propose an ascertainable class because, similar to the class proposed in the instant action, membership in the class could not be determined except through individualized factual inquiries. Specifically, the *Stewart* court would have been required "to resolve whether the property or funds of each putative class member was actually exempt from garnishment or attachment just to determine whether that person is included within the class." *Id.*

Instead of denying certification, the *Stewart* court exercised its discretion and modified the class definition to eliminate any reference to "exempt property or funds." *Id.* (citations omitted). The Court therefore certified a (b)(2) injunctive relief class utilizing its modified class definition. Here, this Court could modify the proposed (b)(2) class in a similar way. That is, if the Court were to eliminate any reference to the date of dishonor of the check, *i.e.*, remove the sentence "defendants filed the complaint more than 12 months after the 'date of dishonor' for the check at issue." The class would then be ascertainable without individualized assessments to determine class membership. *cf. Stewart*, 252 F.R.D. at 391 ("Because the point of (b)(2) classes is to furnish broad injunctive or declaratory relief, and because notice is not required, courts apply the ascertainability requirement more flexibly in this context, than in the (b)(3) context."); *Finch v. N.Y. State Office of Children & Family Servs.*, No. 04-1688, 252 F.R.D. 192, 2008 U.S.

9

Dist. LEXIS 61533, at *17 (S.D. N.Y. Aug. 8, 2008) ("A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class . . . ."). However, similar to the problem faced by the *Stewart* plaintiffs, this definition would cause difficulties with the (b)(3) class.

The *Stewart* plaintiffs proposed a (b)(3) damages class definition as:

[A]ll consumers whose exempt property or funds were attached or garnished, temporarily or permanently, based on an affidavit signed by any principal, partner, or employee of defendant Cheek & Zeehandelar at any time on or after August 24, 2004.

*Id.* at 395. The court found that this definition suffered from the same defect as the proposed (b)(2) class, *i.e.*, "The inclusion of the word 'exempt' ma[de] it impossible to ascertain who is a member of the class without examining the unique circumstances of each putative class member to determine whether his or her attached or garnished property was exempt under either federal or state law." *Id.* The court concluded that the determination is "a laborious process that would eliminate the benefits of litigating Plaintiffs' claims in a class action." *Id.* However, in regards to a (b)(3) damages class, the court explained that unlike an injunctive relief class, modification "would not save" the class, explaining that

[e]ven if the Court were to delete the term "exempt," so that the sub-class was defined as "all consumers whose property or funds were attached or garnished," the class would be ascertainable, but it would necessarily include people who had suffered no injury, and therefore are not entitled to any damages, the very thing that the (b)(3) suit is meant to provide. In other words, some number of persons in the sub-class would have sustained no injury because their attached or garnished property was in fact not exempt. Sorting out which class members would be entitled to actual damages, and in what amounts, would require the Court to undertake a mini-hearing as to each class member to determine whether his or her property was exempt at the time it was attached or garnished. This in turn would cause the sub-class to fail the (b)(3) predominance test: individual issues--the exempt or non--exempt status of each class member's property and the amount of damages each sustained-would predominate over any common issues.

10

*Id.* at 395–96 (footnote omitted).   The Court foresees the same problems in the case at bar.

That is, if the Court were to utilize a modified definition similar to the one it contemplated for the (b)(2) class, the class would be overinclusive.  The class would include members who suffered no damages because the state court cases filed against them were timely.  Sorting out which class members would be entitled to actual damages, and in what amounts, would require the Court to undertake a mini-hearing as to each class member to determine whether the collection action filed against him or her was filed outside of the statute of limitations, whether the limitations period was tolled, and what date the payee had actual or constructive knowledge of the dishonored check, thereby triggering the commencement of the statute of limitations period.

Further problematic here is that the parties do not address separately the impact of Duffey's proposed definition on a (b)(2) injunctive relief class and a (b)(3) damages class.  Neither, of course, do the parties address the Court's conclusion that the proposed class is not ascertainable, nor the Court's inclination to modify the definition.  Therefore, the Court **DIRECTS** the parties to file additional briefing on these issues as follows:

1. By October 24, 2012, the parties shall file simultaneous briefs directed at the feasibility of modifying the class definition.  The parties shall title these briefs as motions.

2. The parties shall be permitted to file simultaneous memoranda in opposition by November 6, 2012.

The parties should address the impact any modified definition would have on both a Rule 23(b)(2) class and a Rule 23(b)(3) class.  Also, the parties' arguments should be informed by *Stewart v. Cheek & Zeehandelar, supra*.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** without prejudice Plaintiff's Motion to Certify Class (Doc. No. 30), and will more fully consider the issue after completion of the additional briefing ordered in this Opinion and Order.

**IT IS SO ORDERED.**

9-25-2012
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**